Please rise. The court is reconvened. You may be seated. This is our final case of the day. Case number 4-15-0015. Stephanie Bond v. Champaign County Sheriff. For the appellant, we have Attorney Bullock. And for the appellee, we have Attorney Elwood. Ms. Bullock, are you ready to proceed? Good afternoon. May it please the court, counsel, My name is Ellen Bullock, and I represent appellant Stephanie Bond on this appeal. I understand I am allowed five minutes for strict rebuttal. This case is about gatekeeping. Picture a horse at the track, or picture a horse track. The horses are stomping and chomping behind the gates, ready to start the race, but the gun goes off early. It's a misfire, so the horses don't race that time. And then the horse hits the gate, and the gate doesn't open. It's a malfunction. The horses don't race that race. Then there's a stumble inside, and the horse clumsily falls, but can get back up, but not in time, so the horses don't race that race. With these horses in mind, let's turn to Stephanie's case as it stands today, waiting for merit review under the Illinois Domestic Violence Act. Everybody agrees that Stephanie has sued under the Illinois Domestic Violence Act, and the Illinois Domestic Violence Act has never yet been reached. Everybody agrees there has been no merit review of the merits of Stephanie's claim of willful and wanton misconduct against the Champaign County Sheriff and against Stephanie, a known victim of domestic violence. The Seventh Circuit was intrigued by the idea of merit review, but withheld finding Stephanie's constitutional claims of equal protection and due process were the right means of raising her claims, and specifically referenced her IDVA claims. The Seventh Circuit said, The Bond-Hunter Council may well conclude that claims under state law provide the best chance of recovery. An affidavit from one officer calls another officer's failure to confiscate Omo Osagie's guns derelict police work. If the federal claim is dismissed or abandoned, the district court should relinquish supplemental jurisdiction over bond state law theories. Upon remand from the Seventh Circuit, Stephanie, through her lawyer, filed the instant complaint in Champaign County Circuit Court. And defendants filed not one motion to dismiss, not two motions to dismiss, but actually three motions to dismiss, which resulted in the order of dismissal, which is here on appeal today. I am willing and able to discuss any of the procedural obstacles and have done so in my brief. But despite the procedural obstacles, this is about whether merit review under the Illinois Domestic Violence Act is appropriate. As the Illinois Supreme Court clearly stated for Section 13217, it's remedial, reflecting a legislative intent to protect the party who brings the action in good faith from complete loss of relief on the merits merely because of procedural defect. Before I ever met Stephanie, before I had agreed to represent her, she filed a pro se complaint. It is my understanding, although it's not in the record, that she filed that pro se complaint because she was urged to do so by clinic workers at a domestic violence clinic who were moved by her plight but not aware of the rules of litigation. I looked at that so-called pro se complaint. That was not drafted by her, unless she's got a law degree. She does not. She's got a CPA degree. But I honestly don't know anything about the drafting of that complaint. I certainly wasn't involved, and I don't know about the drafting. Somebody posted it. It could be, but there was a domestic violence clinic worker that was also a lawyer, so it could have been possible. Thank you, Your Honor. Her pro se suit was against the Champaign County Sheriff and three named deputies, and also an unknown deputy, John Doe. Stephanie filed the lawsuit pro se but never had it served and never had it heard by any court, as would be expected of a pro se litigant. She abandoned her pro se suit before it was ever heard, served, or acted upon. Then Stephanie found a lawyer, and I filed the equal protection in federal court. When it came back down, then we were able to file the federal court relinquished supplemental jurisdiction, and we were able to file the instant complaint. Now, the federal court has referenced, and it's in the appendix materials, Michael Sheely's affidavit. Officer Michael Sheely testifies, and he says, As part of my investigation in the Bond case, Stephanie provided me with an inventory of some of her husband's guns with photos. The inventory and photos showed a large and dangerous gun collection. The presence of a stolen gun in Omo Asaji's collection alarmed me. In my professional experience, the presence of one stolen gun in a large cache of guns should lead to further tracking and testing. In my professional opinion, all of Omo Asaji's guns should have been seized in November of 2009 as soon as my initial investigation was concluded and reported. It is a crime for any person to possess and control guns without a valid void card. Officer Sheely called the Champaign County police work derelict police work, and I ask if that isn't another way of stating allegations of willful and wanton misconduct under the Domestic Violence Act. There is no dispute that there is a pro se complaint, a federal complaint, and an instant complaint. The trial court acted as gatekeeper and kept the instant complaint from receiving merit review. This was done in a manner that abused the admittedly wide and abundant discretion of the court. Section 2619.83 allows dismissal if there is another action pending between the same parties for the same cause. The same cause requirement is not disputed. I think it is the same cause. It's the Illinois Domestic Violence Act. Whether they're pending is disputed. The pro se complaint never actually was pending. It was filed. There's no doubt about that. It exists in paper in the circuit clerk's office. But is it pending? It was never served on any defendant, these defendants here nor any other defendant, and so without service there's no personal jurisdiction. A court can only act if there's jurisdiction, and it was never served. There was no action, no hearing, no action taken. Again, was it pending? I say not. But the third requirement for 2619.83 dismissal is that there be same parties. The same parties requirement is not met here in this case. Yes, there's overlapping parties. The Champaign County Sheriff was sued in both of the lawsuits, the pro se and the instant, and three of the individuals were sued in the same one. But if you think for a moment about the Illinois Domestic Violence Act's system of civil liability, it is for willful and wanton acts by individuals. Well, there were 11 additional individuals sued when a lawyer got involved in the instant complaint, and those 11 additional defendants, if they're the ones who committed the willful and wanton acts that would create the predicate liability, then it's not the same parties. As another matter, the inept pro se complaint sued an unknown John Doe deputy, that of course is a non-entity and cannot bring the same parties into play. Even if same cause, pending, and same parties, and plaintiff repellent disputes that it's pending and disputes that it's the same parties. But even if those requirements are met, Section 2619A3 does not require automatic dismissal. And here we get to the crux of the matter. The trial court has discretion under 2619A3, there's no doubt about it, but that discretion is not unfettered and it is not unguided. And it may be abused, and if it is abused, this court must remand. The court's discretion involves a mandatory weighing of prejudice to the non-movement, Stephanie is three times the non-movement here, against the policy of avoiding duplicative litigation. There is prejudice to Stephanie, the three times non-movement here, if her IDVA claims are never heard, if the substance is never reached because she filed an inept pro se complaint. That was never served, never heard, and never acted upon. And the policy of avoiding duplicative litigation, there was no litigation of the pro se complaint. No defendant was ever asked to answer the complaint because no defendant was ever served with the complaint. So in any mandatory weighing of prejudice to the non-movement, it's very great. And against the policy of avoiding duplicative litigation, there is no threat of duplicative litigation. It's understood from the chronological history, or assumed presumably, I don't think the defendants even knew about the pro se lawsuit until their second motion to dismiss was filed after their first one, which was the IDVA motion to dismiss. Now, that's mandatory, weighing the prejudice to the non-movement against the duplicative litigation. That's mandatory. But there's also what are called the Kellerman factors that have been developed by the courts. The Kellerman factors are not a must, they're not mandatory, but they can inform the court and do inform the court and they should be weighed. The first Kellerman factor is comity. The trial court said there was no issue with comity or likelihood of obtaining relief in a foreign jurisdiction because both the pro se complaint and the instant complaint were filed in Champaign County Court. That is absolutely true. Both were filed in Champaign County Court. But that cuts the other way, actually. Comity is giving respect to the laws and judicial decisions of other jurisdictions out of deference. There is no other jurisdiction. It's all in Champaign County. Inept or lawyerly, it's all in Champaign County. The second Kellerman factor is prevention of multiplicity of lawsuits and prevention of harassment. This Kellerman factor, I think, should be weighed and that it is a protection of defendants, of non-movements, I mean of movements of defendants. And that Kellerman factor was the one that the trial court did address, but I believe wrongly so. It addressed it as whether Stephanie was harassed. But the point is whether there's a threat of harassment or multiplicity against the defendants such that they should be protected from. There is none here. And let me explain why there is none. Absolutely zero. Zero chance of that. And the reason is because there is no, there was never any need for them to answer. They were never called to answer. They were never served. They never became threatened or harassed or given multiple or any service or involvement in the pro se lawsuit. No defendant ever. There's also, I think, in that kind of an implication of harassment has an implication of bad faith. There can be no bad faith against Stephanie. She was pro se at the time. Again, she may have been inept. I don't know, Your Honor, if she received help from a lawyer who's working in some other capacity, but she signed on pro se. The third Kellerman factor is likelihood of obtaining complete relief in a foreign jurisdiction. Once again, there is no foreign jurisdiction. So there's no chance or likelihood of obtaining complete relief in a foreign jurisdiction. That just simply cannot be weighed against Stephanie's right under the IDVA. The fourth Kellerman factor is the res judicata effect of a foreign judgment in a local forum. We have the local forum, Champaign County, the forum where I practice and where the instant complaint was filed. And we have no foreign forum. So there is no possibility of either a final judgment, which res judicata would require, or a foreign final judgment, which would require a case filed in some other jurisdiction. But there is none. So res judicata effect of a foreign judgment in a local forum is zero. The Champaign County forum is protected at all times because the instant complaint was filed there and Stephanie has pursued her IDVA claims right there in Champaign County. You know, the court below referenced 2619A3 and then also subsidiarily or secondarily Section 13217 of the code. As a matter of law, Section 13217 does not apply. First, I will note that Section 13217, and I struggled with this, I may not be as resourceful as the bench's resources or clerks, but it actually has been, the law itself appears in the civil practice book and in West Law as having been removed and then by a case, overruled by a case, and then you go back and you look and there's another law somewhere. So 13217, I'm happy to argue it, but I'm not sure it's the most understandable or clear. Well, she filed a motion to voluntarily dismiss the original complaint in the Champaign County court. The pro se complaint. Yeah, and it was never acted upon. Never. If it had been acted upon, she would have been barred, would she, from refiling a third time? I think that's possible if it had been acted upon, but certainly if it had been acted upon, there would have been jurisdiction in the sense that people would have been served and there would have been a hearing and there would have been an answer. Well, not necessarily. Why couldn't she dismiss it before service? Well, possibly. That didn't happen. Well, she moved to have it dismissed prior to service. Yes, agreed. And for whatever reason, the Champaign County court never got around to it. She never set it for a hearing. Correct. So it's almost like a catch-22. I think it is almost. And I think that's how Judge Ford looked at it because you're arguing she never dismissed it, so 13217 can't apply, but then you argue it's not really pending, so 2619A3 should apply. And I think his problem was he couldn't have it both ways. Well, I think that, again, I wish that it wasn't there, the pro se complaint or the motion to dismiss it. But I don't think the motion to dismiss was never acted upon, so it has no 13217 application because it would have to have a date. I mean, 13217 is a provision that works on a time frame, which we're all familiar with. So it would have to have a date certain when it started. It would have to be file stamped by the clerk that it was dismissed on X date, I think. So if it's not, I think that it can't work in that way. It can't support a 13217 if it doesn't have a date on which to start that time frame, which I think is one year. Right. So if it was never dismissed, I think the point was that it's pending. And then you have two lawsuits pending for the same case. Now, what would happen, can you proceed on the first complaint or amend it at this point in time, or is the statute of limitations running that people weren't added at that time? The statute of limitations has a long run. And I think that on that pro se complaint, I don't exactly know how one would proceed under it. I have a feeling it wouldn't go well. I have a feeling that it would not get stepped up. Diligence with service. Diligence with service would be a problem. The defendants weren't named would be a problem. I personally think it's rather shoddily crafted. I don't think it looked that bad, actually. Possibly. But from my point of view, it wasn't as good as I would have liked it. But that wasn't the main thing. It would be very difficult to proceed on the pro se complaint. I think I said in my brief that it would die of 1,000 arrows. I think it would die quickly of the first 10, 15 arrows, before it reached 1,000. Being service, being jurisdiction, being statute of limitations, being failure to prosecute on her part, all of those and more, I feel. But I haven't pursued the pro se complaint, and I intend never to pursue the pro se complaint for those exact reasons. I find it inept and unhelpful to Stephanie. In Bailey, the Illinois Supreme Court disapproved of the plaintiff's conduct. But notwithstanding our disapproval of plaintiff's conduct, we are constrained to hold the plaintiff's abandonment of their initial action, absent a judgment or order of dismissal does not constitute a dismissal. There is, of course, no judgment or order of dismissal of Stephanie's pro se complaint. It was abandoned by Stephanie before it was ever served or heard. And we would all know if there was an order of dismissal as to the pro se complaint, because it would have a file stamp and it would be familiar to us as lawyers. And then we would know what we had to do with it and when we had what time frame we had to do with it, such as amendment or something like that. Case law says 13217 should be liberally construed in favor of merit review. I feel that the trial court did not acknowledge or serve that liberal review. And 13217, unlike 2619, is not an abuse of discretion review. It is a de novo review for this court. And I feel that the policies of law are clear favoring merit review. And then quoting Adams v. Klink out of the Second Circuit, such a tactical and sterile application of the Civil Practice Act exalts form at the expense of substantive rights. You know, the Champaign County Sheriff refused to remove Stephanie's husband's cachet of guns. She walked them through the house. Maybe she was about as good at that as she was at her pro se complaint. She walked them through the house and she showed them, not all the guns because she didn't know where they all were, and she knew some were hidden, but she showed them the guns and what they did is they took one in the laundry room and unloaded it, took two that were hidden in the laundry room and unloaded those two guns, presumably for safety reasons, although it's hard to understand when they left the other 80 lying around hidden, whatever. And then they left her house and they left her with those guns. Another time the Champaign County Sheriff staked out her house, was surrounding it, but were afraid to go in because they knew of the cachet of guns in there. They knew the dangers of Omo Osagie, who had a history of mental illness and had a history of revoked FOID cards. You know, I think it's time for those facts to get before the proper court. Thank you. Thank you, Patsy. You'll have another chance at a rebuttal. Mr. Elwood? Thank you. Good afternoon. On behalf of the various Champaign County defendants, it is our position that the trial court's decision here was correct and we believe that there are two ways for you to approach this case. I think that the obvious route is to look at it from the standpoint of the motion to dismiss under 2-619-83. I think, Your Honor, you pointed out some of the issues with respect to is it a pending claim or is it a dismissed claim? And I think that's why the trial court addressed it in the alternative and that's why we addressed it in the alternative as well. It's our position that we do have a valid complaint via the pro se complaint here. The valid complaint arises when it's filed. It's not contingent upon service upon the defendants. It's contingent upon the filing at that time. As the trial court pointed out, the court takes jurisdiction over the case, the subject matter, and of the plaintiff and then has to go out and serve to bring in the defendants. But taking jurisdiction over the case comes with the filing of the complaint by the plaintiff. And I think that satisfies the requirement that we have a pending action. The question here then becomes, do we have the same parties? Do we have the same cause of action? And counsel admitted we have the same action here. It's not a cause of action. It's the same action. I think they've admitted that. I'm not going to belabor that. The same parties requirement is a little different argument. Obviously, the original complaint was addressed, I believe, to five or six defendants. There were approximately 18 added at the federal court level when they had the pending state claim. And then the refiled second state claim, 13L claim, has only 11 additional defendants. You get your original defendants from the first pro se matter plus 11 additional defendants. And I think one of counsel's points here is, well, we don't have the same party because we don't have the same individuals by name. We don't have the same individuals by number. But cases such as Hotch from this court, cases such as the ones that we cited in our brief from the various other appellate court districts have said, the same parties requirement can be met so long as the interests are sufficiently similar. You don't have to have the same number of defendants, the same name defendants. So it doesn't have to be the same parties in number or in name, as they put it. The Catherine case talks about that as well. I think we have that in the situation, and that was addressed by the trial court in its consideration, in its weighing of the factors. It's page C430 of the record, A115 of the appendix. But the trial court here did actually consider that factor, and it came to the conclusion that the same parties requirement does not require the same name and number. And so I think that point was considered, and that goes to the argument that counsel's made with respect to are we weighing the prejudice versus the vexation and the harassment. I think that addresses that in some respects. Okay, let me ask you that question, because Judge Ford, either in his written order or in the transcript at the time of the hearing, says something along the lines of, this is clearly vexatious. What was vexatious? He never says what he based that on. I don't believe he ever did explain that beyond the fact that this was a third filing. Again, I'm just offering my opinion based on the same thing that you're reading. But it's my impression that what he's referring to by vexatious is the fact that this is a third filing. The pro se, we have the federal, and we have the second state. Okay, but let's look at it, because the pro se complaint was never served on anybody. As far as they knew, it wasn't even there. That's true. So then they go to federal court, and they dismiss out their constitutional claims, and they come back, as they're allowed to, at least on the surface, into state court. So I just did not understand at all where he was coming from. What was vexatious about Ms. Bond's conduct? I think the vexation has to be read as the fact that there is multiple filings. I mean, to me, vexatious and harassment connotes evil motive, or a bad motive, that you're doing things for a particular purpose that's not a positive purpose. I think that's certainly one interpretation. I think another interpretation can be repeated filings. And I'd like to point out one thing about the federal appendant claim. I think this is important. Councils made comments about, well, we are prejudiced. We don't have the ability, perhaps, to address some of the additional defendants in the case. But after the federal constitutional claims were stricken by the Court of Appeals, and it was sent back to the district court for consideration, council voluntarily then dismissed and gave up on the federal claims, which were then dismissed with prejudice. But the interesting part is, under, I think it's 1367, council had the ability to present to the federal court, look, we've got a federal case here, or we've got state claims here, that we need to have filed and continue to pursue in the federal court, rather than go back to the state court. We have all the defendants here. We have all the cause of action that she's plotted. It was all present. So what's the difference? Well, my point is that one option that she had at that time was to ask the federal court to allow the case to proceed forward. And she had all of her claims, all of her parties, and she complied with the statute of limitations. But she chose to voluntarily dismiss the state claims and then to refile in state court and move forward. So it's our position that any predicament that's been created here by the plaintiff themselves, by having that opportunity in the federal case and walking away from it and coming back to the trial. What's the prejudice to your clients? To my clients? Yeah. Well, this is a situation, I think, where my clients are faced with multiple litigation that's been filed against them. And I think we clearly do have a prior case on file. Whether it's been served or not, we do have prior litigation. And under the rules... activity on both sides. We have a prior case on file. I think that would probably be a more accurate statement. But I think it qualifies as an action pending between the parties. Same parties, same cause of action. So we're exercising our rights under the Code of Civil Procedure to come in and say we have a prior action pending and we'd like that dismissed. Now, the trial court went through the Kellerman factors. And I think counsel at one point made one comment, that, well, it was an abuse of discretion because only one factor was considered. But yet, at one point, she made a comment along the lines that, essentially, discretion was exercised just wrongly so. The factors were weighed, but wrongly so. When we look at the four factors that the trial court considered under Kellerman, the court said factors 1 and 3, comedy and the likelihood of complaining of complete relief, are not really at issue here. So I'm going to focus on factors 2 and 4. And the court considered, as you pointed out, Your Honor, the multiplicity, the vexatious, and the harassment aspect. And perhaps, you know, maybe the proper way would be to look at it as a multiplicity rather than a vexation. I mean, if you have a problem with that phrasing, I think we can certainly say this qualifies as multiplicity because we've got three lawsuits filed. And the fourth factor was considered as well. The trial court exercised discretion. The problem is she doesn't like the conclusion that they reached. That's not the standard. The standard is would any reasonable person, or really, no reasonable person would rule as that trial did in this particular case. But as part of its decision, is the trial court, do you agree the trial court, is to consider the potential prejudice to opposing counsel's client against multiple litigation? Yes, that's in the case law. Right. Yes, it is. And where did the trial court express its consideration of that? I think the trial court did that at page six of the trial court's decision. And that would be the one I referenced at page C430 of the record. And the court is talking about, this is in the context, albeit, of the parties and whether there's a similarity. But the court says, while additional parties have been named in this case, these individuals are not involved in the same set of alleged events leading up to bonds, injuries, and share the same interests. I think that is addressing, really, what they're saying. They're saying, we can't bring in these additional people. And the court's saying, but you don't have to. That's not the standard. The standard is whether the interests are sufficiently similar. We know that there's at least six defendants or five defendants from the original trial. I think Justice Holder-White is asking you, if they never proceeded on the pro se complaint, and if they could have still proceeded on the federal complaint, then what's the difference if they're going to proceed in federal court or in state court on state court claims? What's the prejudice to your clients? I think the difference is that they didn't in certain time frames that have expired. And we definitely have a multiple lawsuit situation. My client has the right, I guess is the way of saying it, under the Code of Civil Procedure, to come in and raise a motion saying we've got multiple litigation proceeding. Had they proceeded on the pro se complaint, it would have gone forward and we wouldn't have any of the arguments we do today. Had they proceeded in the federal case under the appended jurisdiction claims, we'd wish to have the opportunity to do so. We'd be facing a different situation. What if the federal court said, no, I'm going to send it back to state court. I don't need to hear it. I think that would give a more compelling argument to my opponent. I think it would, that the federal court would refuse to do that. But they didn't. They didn't even ask. I think that's our point here. It's not whether or not we could have proceeded in the federal court action as defendants and whether that could have gone forward. I think the question is, under these facts where we've got pro se filing, the federal and the state court refiling, whether or not the trial court properly considered our motion under 619A3. And we believe that the trial court did based on the oddities of this case and the factual disposition of this case. Procedural, I should say, disposition of the case. I guess I'm still not clear on how your client is prejudiced or your clients. Well, I think the prejudice is a defendant is entitled to come in and ask a trial court. We have multiple cases pending against us. Right. The court has discretion, but the issue is that he abuses discretion. And if there's no prejudice to your clients from having to proceed under these claims that were filed in federal court that they had notice of when they never defended the first claim that was filed, is it an abuse of discretion for the trial judge then to refuse to allow them to proceed on their complaint with state court? I guess I don't see so. And I'm probably not being very articulate here in my response. I apologize. I'm just having trouble seeing the prejudice to your clients. Yeah, I think the prejudice stems from the fact that we do have that right to come in. We clearly have pending litigation. But there's a difference between having the right to come in and demonstrating that, judge, if you go this way, it will prejudice us because we will be required to do this and we've already been required to do that. That's the part that's missing. I think when I look at this, we've got multiple pending claims. I believe that we do. We have the Pro Se and we have the 13L case. It's pending. We have the right to come in and raise our motion and say we've got a qualification or we've got one of the grounds for a motion to dismiss based on A3. The trial court then was faced with the decision, which case do I dismiss? How do I handle this? The trial court in this case considered the arguments that we're making here today, considered the factors under Kellerman, and made a decision. And whether he went one way or the other, he made a decision. He had to go one way or another. And I guess my point is we did everything that we were supposed to do as a defendant when we were faced with multiple pending litigation. We did multiple pending cases, and we did that. You did not even know that the Pro Se complaint had been filed. Well, we did when we filed our motion. Of course you did that. But initially, during your first and second motion to dismiss, you didn't know. Right? It was only until you filed that third motion to dismiss it. That's my understanding from the record, yes. There's a Southern Pro Se complaint sitting out there. Right. To me, it makes it a little harder for me to argue about how this big multiplicity of lawsuits was really a burden to your clients. But once we find out that there's multiple lawsuits pending, then we have the right for the statute to come in and ask. I'm not criticizing you. No, I'm not taking this as criticizing, Your Honor. No, not at all. You have the right to come in and move to dismiss. The issue is the trial judge abuses his discretion by allowing that motion. And my point is... Instead, could he have dismissed the Pro Se complaint instead? I think it could have been an option that he had, but that's my point. There was a motion pending, right? There was a motion to dismiss pending. There was, yes, by voluntary dismissal. Yes, yes, not by us. That's right. But that's my point, Your Honor. The judge had to decide one way or another, do I dismiss the pending or do I dismiss the prior? And he weighed the factors and dismissed the pending. I guess I don't see how that's an abuse of discretion if the judge acknowledges the factors, considers it, applies the factors to the case, and makes a decision. Well, was it an abuse of discretion to find vexatious and harassment conduct here on the part of the plaintiff? What did she do that was so horrible? I mean, to me, that's extreme language. Well, I think we have to look at the whole, the prevention of multiplicity, vexation, and harassment. He didn't decide it on that, did he? He decided, he said, vexatious, it's clearly vexatious and harassment. He says on page C431, which is A116 of our appendix, first full paragraph, he's talking about the various factors under Kellerman. He says, however, the factor addressing the prevention of multiplicity, vexation, and harassment weighs heavily in favor of the dismissal. I guess I read that as he considered all three. Now, I grant you, he did make some other comments specifically referencing vexatious and harassment, but he also does state the other grounds, and I think he does that twice in here. So when we've got that in there, is that abuse of discretion then? Well, I guess the question becomes, is it an abuse of discretion when there is clearly prejudice to her client because there are claims that will never be reached against people that she's added in these additional allegations that were initially in the federal court? I mean, isn't that prejudice to her? It could be in some capacities, but yet also we can't look at that in the vacuum of the language of 2619A3 because it anticipates the fact that the prior litigation may not include all the people that are involved in the subsequently filed matter. And I think by the way the statute is written, it implicitly assumes that there are going to be situations where that, in fact, might arise. Otherwise, we'd have to have the parity of parties, number, and name. And no case that I'm aware of says that. Well, I guess to me, that's why we have a judge who has to exercise their discretion. And I guess I would say here. I guess the statute doesn't. It's almost as if you're arguing if we can show that there is another case pending, then we automatically win. And that's not the law. No, I'm not saying automatically, Your Honor. I'm saying it puts it in the realm of the discretion of the trial judge and the trial judge exercise discretion here. They just don't like the result. So the argument would be the same if you had lost. Yeah. If it was appealable, you could say. You don't like the result, Elwood. Then you would say, well, it's obviously an abuse of discretion if I don't like the result. Well, I don't know if I carry that much weight. My point is this. Something doesn't become a matter that no reasonable person would decide simply because there could be an alternative decision from that. The judge obviously had an alternative decision here. He could have denied it. But we're not saying it should be automatic. I hope I didn't give that impression because it's not what we're saying. What we're saying is when we identify this, we place that in front of the trial court and the trial judge does the factor analysis in the lane and then comes to a conclusion. You said, you know, you've done what you were supposed to. You've exercised your right to file this. Correct. And to seek this remedy. Well, part of the weighing is that right to be determinative versus the underlying merits of the lawsuit, which has to do with the prejudice that would accrue to the defendant. And I think our questions suggest that if you look at it subjectively, maybe that's the way to put it, that the prejudice is far greater to the plaintiff in terms of long-term consequences versus kind of short-term consequences which adhere to the meaning of the code but certainly could have gone the other way. Is it proper for us to weigh that in deciding whether or not he abused his discretion? He's got discretion. He could do what he did should he have done that in these circumstances. That's really what it gets down to. And the only prejudice you're able to assert is the prejudice of not having the ability in this instance to win on what you view as a right and which is a right. The plaintiff is saying, I'm done for in my case if I don't win. You're saying, well, we really ought to win because that's the way civil We weren't really that inconvenienced. We're not really prejudiced as far as we know in terms of gathering evidence. The time frame really isn't that significant given that this second complaint was filed within months after the federal district court. On a matter that was roughly six years at the earliest, maybe 10 or 12 years if you take some of the allegations. I thought the events happened in 2011. Well, no. The events, as alleged, stretch over a long period of time. Well, yeah, but I'm talking about the ultimate. Right. The shooting was in 2010. But the shooting wasn't the event. It was the leading up to the shooting. It was the alleged result of everything, as counsel would have it. No, if I may conclude quickly. We do believe that the trial court did weigh this factor and did weigh this. He may not have articulated it in the same manner. But as far as considering the analysis of the same parties and the interest of whether they're sufficiently similar, I think the judge had to consider that. I think the judge did consider the prejudice here and made that ruling as he did. So, again, we're asking you to find that this was not an abuse of discretion. And we don't believe that they can show that no reasonable person would have reached this conclusion. Thank you very much. Thank you, Mr. Allard. Ms. Bullock, do you have any rebuttal? Very briefly on rebuttal. Your Honor said, pointed out, opposing counsel said maybe they could have stayed in federal court and begged the federal court to keep supplemental jurisdiction. That's a good idea, except the federal court, the Seventh Circuit said if the federal claim is dismissed or abandoned, then the district court should relinquish supplemental jurisdiction over bond state law theories. As a practitioner, we really listen to the courts and don't relish going in and asking, begging a court to do what it's just told us it doesn't want to do. Did you have just transferred the case from the federal court into the state court? That wasn't – I do have familiarity with the federal court pleadings. I did those, handled those. It came down from the Seventh Circuit, and then the district court issued a ruling that said you have 30 days to do this, this, or this, and we are declining supplemental jurisdiction. They gave you leave to file an amended complaint, is that correct? The Seventh Circuit gave a leave to seek out a pattern or practice of equal protections, but that was a federal matter. It was not this matter. They specifically said both the Seventh Circuit and the district court on remand specifically said we don't want supplemental jurisdiction now that the federal is gone. But there was this other issue of whether they wanted to seek federal pattern or practice, which she chose not to do. I understand – I'm sorry, just one more thing. So if you had chosen to do that, your state claim still would have been gone from the federal level? Yes, the federal court said – the Seventh Circuit said the district court should relinquish supplemental jurisdiction. Now I guess conceivably I could have begged them not to, but what I'm saying is – I understand that, but I just want to make sure that there was no way, no option you had to keep those state claims in front of the federal court. No way. My question still is, did you have the option to transfer it, have all the services applied, just transfer the federal case into the state court and start – No, they said dismissed with – I wish I had brought it with me. They dismissed it with prejudice, except with the federal, and then said you have 30 days to file in state court. Now I don't know how they knew 30 days to file in state court. They were just saying we've relinquished our supplemental jurisdiction. You have 30 days to file in state court. Is that helpful? I don't really know how else to answer the question. No, because even if you have 30 days to file in state court, during that 30 days, could you have moved to transfer the federal supplemental claims to the state court so that if the defendants had already been served, they didn't have to be served again, you just pick up in state court where you left off in the federal system? I don't know that that was an option. I did not consider that option. And I was not told or given an idea that that was an option. I don't think it was, but I hear you on it. Very briefly, because time's up, Illinois Domestic Violence Act is the law of Illinois. It absolutely is. It's a legislative enactment for the protection of domestic violence victims in this state. There's nothing wrong or nothing bad faith about Stephanie proceeding on that. She has acted in no bad faith. The worst that can be said about her is she was enacted as a pro se and possibly that her counsel maybe pursued what turned out to be not helpful federal equal protection claims. But if the fact that she filed three is a problem, it really, if you want to get nitpicky, they filed three times two. So if you're taking three bites of the apple, if that is a problem all in and of itself, the defendants also did that with their three motions, but there's not an exact parallel. What I'm trying to say as I sit down is that Stephanie has a valid IDVA claim. We are willing to present it and pursue it through proper means, through serving the defendants, through acting on it, through serving the court, and we believe we should have that right. Thank you. Thank you, counsel. We'll take this matter under advisement. This matter is assessed.